IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **MENDI MANN,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | Civil Action No. 4:21-cv-489-ALM-KPJ |
| § | |
| **KILOLO KIJAKAZI,**[1] § | |
| *Acting Commissioner of Social Security*, § | |
| § | |
| **Defendant.** § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Mendi Mann ("Ms. Mann") brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her claims for disability insurance benefits and supplemental security income. Having considered the briefs submitted by the parties and the administrative record, the Court recommends that the Commissioner's final decision be **AFFIRMED**.

**I.   APPLICABLE LAW**

**A.   Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

1

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i)–(iv), 416.920(a)(4)(i)–(iv); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) ("The burden of proof is on the claimant for the first four steps but shifts to the agency at step five; a finding at any step that a claimant is or is not disabled ends the analysis.").

**B.  Standard of Review**

The standard of review in a social security appeal is whether the Commissioner's final decision[3] "is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling*, 36 F.3d at 434 (quoting *Villa*, 895 F.2d at 1021). If substantial evidence supports the Commissioner's findings and the correct legal

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pena v. Saul*, 846 F. App'x 308, 309 (5th Cir. 2021) (internal quotation marks omitted) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "[I]t must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Bailey v. Saul*, 853 F. App'x 934, 935 (5th Cir. 2021) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). The Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 434 (quoting *Harrell*, 862 F.2d at 475). Rather, evidentiary conflicts are for the Commissioner to decide, and "if a decision is supported by substantial evidence, it must be affirmed even if there is contrary evidence." *Bailey*, 853 F. App'x at 935 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). However, the Court must do more than "rubber stamp" the decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

## II.     BACKGROUND AND PROCEDURAL HISTORY

Ms. Mann was born in 1969, completed college, and worked as a registered nurse until she stopped working in early 2018.[4] *See* Tr. 39, 81, 258, 275, 288–89. On April 9, 2018, Ms. Mann filed applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). *See* Tr. 79–80, 238–57. In both applications, Ms. Mann alleged disability since March 31, 2017, due to "Cervical Strain; Cervical Disc Herniation C3, C4, C5; Lumbar Disc Herniation; Neuropathy in all 4 extremities; Radiculopathy in all 4 extremities; Depression; Anxiety; Fear of driving possible PTSD; 20–25lb lifting restriction, no bending or twisting; and Intractable pain." *See* Tr. 81–82, 97–98. The Social Security Administration ("SSA") denied Ms. Mann's claims initially on February 7, 2019, and upon reconsideration on June 17, 2019. *See* Tr. 153–60, 164–71. Thereafter, Ms. Mann filed a written request for a hearing. *See* Tr. 175–76. On November 17, 2020, Administrative Law Judge Mark Mendola (the "ALJ") held a hearing. *See* Tr. 47–78. The hearing was attended by Ms. Mann, her attorney, and a vocational expert (the "VE"). *See* Tr. 47. During the hearing, Ms. Mann amended her alleged onset date to February 13, 2018. *See* Tr. 53.

On December 11, 2020, the ALJ issued an unfavorable decision denying Ms. Mann's claims. *See* Tr. 19–41. In his decision, the ALJ found that Ms. Mann met the insured status requirements of the Social Security Act (the "Act") through September 30, 2023. *See* Tr. 21. At step one, the ALJ found that Ms. Mann had not engaged in substantial gainful activity since February 13, 2018, her alleged onset date. *Id.* At step two, the ALJ found that Ms. Mann had the following severe impairments: lumbar and cervical spine disorders with radiculopathy; obesity; depressive disorder; post-traumatic stress disorder; generalized anxiety; adjustment disorder; and

---

[4] Documents 10-1 through 10-22 comprise the Administrative Record ("Tr."). When citing to the record, the Court cites to the Tr.'s internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

bereavement disorder. *See* Tr. 22–30. The ALJ determined that Ms. Mann's alleged headache impairment was not a medically determinable impairment. *See* Tr. 30. At step three, the ALJ found that none of Ms. Mann's impairments, alone or in combination, met or medically equaled a Listing. *See* Tr. 30–32. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Mann's RFC. *See* Tr. 32–39. The ALJ found Ms. Mann had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift and/or carry up to 20 pounds occasionally and 10 pound[s] frequently. She can sit for about 6-hours in an 8-hour workday. She can stand and/or walk for a combined total of only 2-hours in an 8-hour workday. She cannot climb ladders, ramps, or scaffolds. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She cannot be exposed to hazards such as dangerous moving machinery or unprotected heights. She cannot operate a motor vehicle as part of her job duties. She can frequently handle and finger objects bilaterally. She can understand, remember, and carry out detailed but not complex tasks and instructions. She can adapt to changes and respond to customary work pressures in a routine work setting.

*See* Tr. 32. At step four, the ALJ found that Ms. Mann was unable to perform her past relevant work as a registered nurse or registered nurse supervisor, as actually or generally performed. *See* Tr. 39. Based on the VE's testimony, the ALJ next found that Ms. Mann had acquired work skills from her past relevant work as a registered nurse. *Id.* At step five, the ALJ determined that considering Ms. Mann's age, education, work experience, and RFC, Ms. Mann had "acquired work skills from [her] past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." *See* Tr. 40. Relying on the VE's testimony, the ALJ specifically found that Ms. Mann could perform occupations such as blood order clerk, hospital registration clerk, and hospital admitting clerk. *Id.* Accordingly, the ALJ concluded Ms. Mann was not disabled within the meaning of the Social Security Act (the "Act"). *Id.*

Ms. Mann requested that the Appeals Council review the ALJ's unfavorable decision. *See* Tr. 235–37. On April 27, 2021, the Appeals Council denied the request for review. *See* Tr. 10–13.

Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); 42 U.S.C. § 405(g). Ms. Mann filed her appeal to this Court on June 29, 2021.[5] *See* Dkt. 1.

### III.   ANALYSIS

Ms. Mann raises a single argument on appeal. Ms. Mann contends the ALJ erred in determining she had acquired work skills as a registered nurse that were transferable to the semi-skilled jobs of blood order clerk, hospital registration clerk, and hospital admitting clerk. *See* Dkt. 14 at 8–17. The Commissioner counters that the ALJ properly considered Ms. Mann's transferable work skills. *See* Dkt. 15 at 5–9. As set forth below, the Court finds that Ms. Mann's argument lacks merit.

#### A. Law Regarding Transferability of Work Skills

In order to evaluate a claimant's skills and determine the existence of work in the national economy that the claimant can do, social security regulations classify occupations as "unskilled," "semi-skilled," or "skilled." *See* 20 C.F.R. §§ 404.1568, 416.968. Unskilled work is the least complex work, consisting of tasks that can be learned on the job in thirty days or less and which require "little specific vocational preparation and judgment." *See id.* §§ 404.1568(a), 416.968(a); SSR 82-41, 1982 WL 31389, at *2 (Jan. 1, 1982). "A person does not gain work skills by doing unskilled jobs." *See* 20 C.F.R. §§ 404.1568(a), 416.968(a). Semi-skilled occupations are "distinctly simpler than the more highly skilled type of jobs" but still "contain more variables and require more judgment than do unskilled occupations." SSR 82-41, 1982 WL 31389, at *2; *see also* 20 C.F.R. § 404.1568(b) ("Semi-skilled work is work which needs some skills but does not require doing the more complex work duties."); *id.* § 416.968(b) (same). Skilled work is the most

---

[5] A claimant has sixty days to file an appeal. The sixty days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* Tr. 11. Ms. Mann received an extension of time to file her appeal. *See* Tr. 1–2.

complex type of work, requiring "qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produce." *Id.* §§ 404.1568(c), 416.968(c).

If a claimant is unable to perform past relevant work "and that work has been determined to be skilled or semiskilled," the ALJ must consider whether the skills acquired from the claimant's past work are transferable to a new position. *See* SSR 82-41, 1982 WL 31389, at *1. "A skill is knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level." *Id.* at *2. "Transferability means applying work skills which a person has demonstrated in vocationally past relevant jobs to meet the requirements of other skilled or semiskilled jobs." *Id.* "This depends largely on the similarity of occupationally significant work activities among different jobs." *See* 20 C.F.R. §§ 404.1568(d)(1), 416.968(d)(1).

The transferability of skills to a new occupation is evaluated based on a likelihood that: (1) the new job requires the same or a lesser degree of skill than the old job; (2) the same or similar tools and machines are used in both jobs; and (3) the same or similar raw materials, products, processes, or services are involved in both jobs. *See id.* §§ 404.1568(d)(2), 416.968(d)(2). When considering transferable skills, the claimant's age, education level, and prior work experience are all relevant factors. *Id.* §§ 404.1563, 404.1564, 404.1565, 416.963, 416.964, and 416.965.

If the ALJ determines that a claimant has acquired transferable skills, the ALJ must make certain findings in the decision. *See* SSR 82-41, 1982 WL 31389, at *7. The ALJ must identify the "acquired work skills . . . and specific occupations to which the acquired work skills are transferable." *Id.* "Evidence that these specific skilled or semiskilled jobs exist in significant numbers in the national economy should be included." *Id.* The ALJ may rely on VE testimony or

7

job information available in various governmental or other publications, including the Dictionary of Occupational Titles ("DOT"). *Id.*

### B. The Vocation Expert's Testimony

In this case, the VE began her testimony during the hearing by first classifying Ms. Mann's past work. *See* Tr. 70–71. Relying on the DOT, the VE classified the following two jobs as Ms. Mann's past work:

(1) Registered Nurse, DOT No. 075.364-010 (Medium, Skilled, SVP 7)[6]

(2) Registered Nurse Supervisor, DOT No. 075.167-010 (Light, Skilled, SVP 7)[7]

*See* Tr. 71. With Ms. Mann's RFC in mind, the ALJ asked the VE a series of hypothetical questions regarding Ms. Mann's ability to perform her past work given various functional limitations. *See* Tr. 71–72. In response to these questions, the VE testified that Ms. Mann could not perform her

---

[6] The job description for registered nurse, as set forth in the DOT code identified by the VE is:

> Provides general nursing care to patients in hospital, nursing home, infirmary, or similar health care facility: Administers prescribed medications and treatments in accordance with approved nursing techniques. Prepares equipment and aids physician during treatments and examinations of patients. Observes patient, records significant conditions and reactions, and notifies supervisor or physician of patient's condition and reaction to drugs, treatments, and significant incidents. Takes temperature, pulse, blood pressure, and other vital signs to detect deviations from normal and assess condition of patient. May rotate among various clinical services of institution, such as obstetrics, surgery, orthopedics, outpatient and admitting, pediatrics, and psychiatry. May prepare rooms, sterile instruments, equipment and supplies, and hand items to [surgeon, obstetrician, or other medical practitioner]. May make beds, bathe, and feed patients. May serve as leader for group of personnel rendering nursing care to number of patients.

*See* DOT No. 075.364-010.

[7] The job description for registered nurse supervisor, as set forth in the DOT code identifies by the VE is:

> Registered Nurse Supervisor: Directs, through head nurses, activities of nursing staff: Plans and organizes activities in nursing services, such as obstetrics, pediatrics, or surgery, or for two or more patient-care units to ensure patient needs are met in accordance with instructions of physician and hospital administrative procedures. Coordinates activities with other patient care units. Consults with [head nurse] on nursing problems and interpretation of hospital policies to ensure patient needs are met. Plans and organizes orientation and in-service training for unit staff members, and participates in guidance and educational programs. Assists in formulating budget. Engages in studies and investigations related to improving nursing care.

*See* DOT No. 075.167-010.

past relevant work because the demands of her past work exceeded her RFC. *Id.* The ALJ then asked the VE whether Ms. Mann had "any transferable skills to the sedentary or light semi-skilled level." *See* Tr. 72. The VE responded that, while there were no skills transferable to light work due to Ms. Mann's standing/walking limitations, there were work skills that were transferable to the sedentary level. *Id.* The following exchange then took place:

> ALJ: Okay. And what, what skills would those be . . . that would be transferable to the sedentary level?
>
> VE: . . . She's worked as a registered nurse, so she would have skills transferable. Her ability to perform ADLs, which is activities of daily living, for the patients, to give patient care, monitor patients' vital signs, monitor the patient's medical chart according to doctors' prescriptions and things of that nature, being able to input patients' care into the computer, following up with the patient on medication, and follow up with the patient in terms of how the patient is doing and things of that nature and, putting that information into the computer system.
>
> ALJ: Okay. And what . . . jobs . . . could the individual perform with these transferable skills and no additional skills at the sedentary, semi-skilled level?
>
> VE: Yes, Your Honor. One example would be a blood order control clerk. That is DOT code 245.367-026. The strength level is sedentary. The skill level is 3. The number[] in Texas is 6,162. The number[] in the U.S. is 103,000. Another example would be a hospital registration clerk, DOT code 205.367-042. The strength level is sedentary. The skill level is 3. The number[] in Texas is 10,706. The number[] in the U.S. is 192,360. Another example would be a hospital admitting clerk, DOT code 205.362-018. The strength level is sedentary. The skill level is 4. The number[] in Texas is 5,838. The number[] in the U.S. is 100,134.

*See* Tr. 72–73. As set forth above, the VE proposed three jobs—blood order control clerk, hospital registration clerk, and hospital admitting clerk—and provided job numbers at the national and state level for each proposed job. The ALJ then posed additional hypotheticals to the VE, which the Court need not address because the ALJ did not rely on them in his decision. *See* Tr. 73–76. The

9

hearing transcript reflects that Ms. Mann's attorney cross-examined the VE, but did not ask any questions concerning transferability of work skills during the cross-examination. *See* Tr. 76.

### C. Whether the ALJ Erred in the Transferability Analysis

Relying on the VE's testimony, the ALJ made the following findings in his decision regarding transferability of work skills: first, the ALJ found Ms. Mann could not perform her past relevant work as a registered nurse or registered nurse supervisor; second, the ALJ found that Ms. Mann had at least a high school education; third, regarding age categories, the ALJ stated that Ms. Mann was forty-seven (47) years old (the "younger individual age 18-49" category) on her February 13, 2018, alleged disability onset date, but changed age categories to an individual "closely approaching advanced age" at the time of the decision. *See* Tr. 39. Fourth, the ALJ found Ms. Mann had "acquired transferable skills in her past relevant work as a registered nurse." *Id.* The ALJ noted that the VE:

> explained that the [registered nurse] position required the ability to assist with patient's activities of daily living, their care, monitor their vital signs, monitor medical charts according to doctor's prescriptions, input their data into the computer, and follow up with patient regarding their medication and overall health. Thus, [Ms. Mann] had acquired transferable skills in her past relevant work as a registered nurse.

*Id.* Finally, for his step five finding, the ALJ relied on the VE's testimony that Ms. Mann acquired transferable work skills as a registered nurse, and that based on her age, education, and RFC, she could perform work as a blood order clerk, hospital registration clerk, and hospital admitting clerk with jobs for these occupations existing in significant numbers in the national economy. *See* Tr. 40.

The above findings in the ALJ's decision demonstrate that the ALJ did not err in the transferability analysis. Consistent with applicable regulations and SSR 82-41, the ALJ's decision identified Ms. Mann's acquired work skills from her past work, listed specific occupations to

which the acquired work skills were transferable, and stated that the specific occupations existed in significant numbers in the national economy. *See* SSR 82-41, 1982 WL 31389, at *7 ("When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the ALJ decision for the claimant and for a reviewing body including a [f]ederal [d]istrict [c]ourt."). Ms. Mann had an opportunity to cross-examine the VE, but elected not to ask any questions regarding the VE's transferability-related testimony. Accordingly, the VE's unchallenged testimony constitutes substantial evidence supporting the ALJ's transferability findings. *See, e.g.*, *Scott v. Shalala*, 43 F.3d 669, 1994 WL 725034, at *5 (5th Cir. 1994) (holding VE's hearing testimony that claimant's acquired work skills "would transfer to other sedentary work" supported the ALJ's finding that the skills could "be applied to meet the requirements of semiskilled work activities of other work").

The Court is not persuaded by Ms. Mann's arguments to the contrary. Ms. Mann does not dispute the ALJ's testimony that she had past relevant work as a registered nurse. Nor does she dispute that she acquired the skills identified by the VE in her work as a registered nurse: namely, "the ability to assist with patient's activities of daily living, their care, monitor their vital signs, monitor medical charts according to doctor's prescriptions, input their data into the computer, and follow up with patient regarding their medication and overall health." *See* Tr. 39. Rather, Ms. Mann contends these work skills all involve "direct patient care" while the jobs identified by the VE—blood order clerk, hospital registration clerk, and hospital admissions clerk—do not. *See* Dkt. 14 at 10–11. Thus, she maintains her acquired work skills are not transferable because the proposed jobs are not vocationally relevant to the past work. *Id.* Ms. Mann's characterization of the VE's testimony regarding her acquired work skills is incorrect. Significantly, Ms. Mann fails to consider

11

that the work skills the VE identified did not all involve direct patient care. The VE actually testified that the transferable skills included inputting patient data into the computer system, dealing with medical information, monitoring medical charts, tracking/following up with patients and inputting such information into the computer system. There is no indication that direct patient care was the sole characteristic upon which the VE determined transferability. Clearly, it was not. Furthermore, the Court is unaware of, nor does Ms. Mann argue there is, any requirement that exact similarity between jobs is needed for a finding of transferability. *See* 20 C.F.R. § 404.1568(d)(3) ("There are degrees of transferability of skills ranging from very close similarities to remote and incidental similarities among jobs. *A complete similarity of all three factors is not necessary for transferability*." (emphasis added)); *id.* § 416.968(d)(3) (same). Although Ms. Mann now points to the DOT job descriptions for the three jobs identified by the VE in an effort to argue a lack of similarity in job skills between these jobs and a registered nurse, SSR 82-41 instructs that "[n]either an occupational title by itself nor a skeletal description is sufficient" for documentation of skills and skill levels. *See* SSR 82-41, 1982 WL 31389, at *2. And SSR 82-41 itself provides that vocational specialists (specifically defined in the Ruling as "all vocational resource personnel," including vocational experts) may assist the ALJ to determine "[s]kills, levels of skills and potential occupations to which skills from PRW [past relevant work] may be transferred." *Id.* at *4. Thus, the ALJ properly relied on the VE's testimony to determine whether there were transferable work skills, and Ms. Mann's argument based on the DOT job descriptions is insufficient to establish reversible error.

  Ms. Mann also points to the SSA's Program Operations Manual System ("POMS") § DI25015.017, which covers transferability of skills and instructs ALJs to search for occupations related to the claimannt's past relevant work by looking for the same or similar: "guide for

12

occupational exploration (GOE) code; materials, products, subject matter, and services (MPSMS) code; work field (WF) code; occupation group (first three digits of DOT code); or industry designation." *See Transferability of Skills Assessment (TSA)*, Program Operations Manual System (POMS), Soc. Sec. Admin. (June 21, 2017), https://secure.ssa.gov/apps10/poms.nsf/lnx/0425015017. Ms. Mann interprets this POMS provision to mean that the ALJ must exclude jobs if they do not have the same codes or industry designations as a claimant's past relevant work. But the POMS does not actually say that. Although the POMS states that a person's skills are most likely to transfer between jobs of the same or lower skill level and the "same or similar" tools, materials, products, processes or services, the POMS also notes that "[a]n absolute similarity of all of these factors is not necessary." *Id.* In addition, in the section entitled "Additional tips to assist in the TSA," the POMS notes that skills "are likely to transfer" from "highly skilled occupations" or "occupations with skills applicable across a number of industries." *Id.* Nursing is listed in the POMS as one of the common jobs with skills highly likely to transfer to other light work. *Id.* Finally, like SSR 82-41, the POMS itself instructs the ALJ to rely on VE testimony that is "based on [the VE's] expert personal knowledge" when making the requisite transferability findings, and directs the ALJ to consider "*all* relevant vocational sources . . . [when] mak[ing] a judgment about whether skills gained in PRW [past relevant work] are useable in other work within the claimant's RFC." *Id.* (emphasis added). As such, the POMS reinforces that an ALJ can rely on the VE's testimony to ascertain whether job skills are transferable based on the VE's expertise and the VE's knowledge of the claimant's work history. As the Fifth Circuit has explained,

> "The value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." Thus, although this Court has not addressed when there is a conflict between the testimony of a vocational expert and the DOT and how that conflict is to be resolved, this Court has acknowledged that the DOT job descriptions should not be given a role that is exclusive of more specific vocational

13

> expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job.

*Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000); *see also Vial v. Soc. Sec. Admin.*, No. 20-cv-1510, 2021 WL 6113770, at *4 (E.D. La. Nov. 16, 2021), *R. & R. adopted sub nom. Vial v. Saul*, 2021 WL 6112571 (E.D. La. Dec. 27, 2021) (noting "the value of a VE is that he or she is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." ). Thus, it was not improper under the POMS for the ALJ to rely on the VE's testimony to find Ms. Mann's acquired work skills transferred to other semi-skilled sedentary jobs in the medical industry.

As a final matter, the Court must emphasize that Ms. Mann's attorney was afforded an opportunity to cross-examine the VE, but elected not to contest the VE's testimony regarding transferability of skills. The Fifth Circuit has repeatedly cautioned that, "claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Carey,* 230 F.3d at 146–47. In short, Ms. Mann cannot now complain of the purported inadequacy of the VE's transferability testimony when she did not deem it important enough to merit adversarial development during the hearing. *See, e.g.*, *Perez v. Barnhart*, 415 F.3d 457, 464 (5th Cir. 2005) ("The VE testified that there were numerous jobs in the national economy that Perez could perform, but Perez's attorney neither cross-examined the VE nor provided any contrary evidence. We have held that where the claimant offers no evidence contrary to the VE's testimony, the claimant fails to meet his burden of proof under the fifth step of the disability analysis.").

In sum, Ms. Mann has not demonstrated reversible error in the ALJ's transferability analysis.

## IV.   RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **AFFIRMED**.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 30th day of August, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE